**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**(Western Division at Cincinnati)**

| | | | |
|---|---|---|---|
| **ANDREW MITCHELL and** | : | | |
| **DAVID SCHOFIELD** | | Case No. | : |
| | : | | |
| Plaintiffs | | | |
| | : | | |
| v. | | | |
| | : | | |
| **CITY OF CINCINNATI** | | | |
| | : | | |
| and | | | |
| | : | | |
| **MAYOR JOHN CRANLEY** | | | |
| | : | | |
| Defendants | | | |

**PLAINTIFFS' VERIFIED COMPLAINT FOR DECLARATORY RELIEF,**
**INJUNCTIVE RELIEF AND DAMAGES, WITH JURY DEMAND ENDORSED**
**HEREON**

**Introduction**

1.     Among other things, this action seeks to obtain declaratory and injunctive relief relating

to a certain race and sex-based consent decree entered into by the City of Cincinnati, which is

now decades old.  With the passage of time, and now in violation of the Constitution, both

consent decrees actually require ongoing race-based discrimination in hiring and promotions.

Specifically, with the passage of 34 years, neither consent decree satisfies strict scrutiny and the

requirements of *Detroit Police Officers Assn v. Young*, 989 F.2d 225 (1993) and *Cleveland*

*Firefighters for Fair Hiring Practices v. City of Cleveland*, 669 F.3d 737, 738-739 (6th Cir.

2012).

**Parties**

2.     Plaintiffs, Andrew Mitchell and David Schofield are and at all times relevant hereto have

been residents of the State of Ohio and Hamilton County, Ohio.  They are, and have been, duly

employed by the City of Cincinnati as police officers. They are white, male, and were not even born when the complained of discrimination by the City of Cincinnati, which prompted the 1987 consent decree at issue in this matter, purportedly occurred.

3.     Defendant, the City of Cincinnati, is a duly chartered municipality and city within the State of Ohio and, in that capacity, maintains a police department.

4.     Defendant, Mayor John Cranley, is the duly elected Mayor of the City of Cincinnati and, in part, has oversight, control, and supervision over the actions complained of herein.

## JURISDICTION AND VENUE

5.     Subject matter jurisdiction over the claims and causes of action asserted by Plaintiffs in this action is conferred on this Court pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 1988, 28 U.S.C. §1331, 28 U.S.C. § 1343, 28 U.S.C. §§ 2201 and 2202, and other applicable law.

6.     Venue in this District and division is proper pursuant to 28 U.S.C. §1391 and other applicable law, because much of the deprivations of Plaintiff's Constitutional Rights occurred in counties within this District within Ohio, and future deprivations of Constitutional Rights are threatened and likely to occur in this District.

## FACTS COMMON TO ALL CLAIMS

### The 1987 Consent Decree

7.     On September 14, 1987, the City of Cincinnati entered into another consent decree, this time in state court, related to promotions to Lieutenant, Captain, and Assistant Chief within the police department (hereinafter the "State Consent Decree"). A true and accurate copy of which is attached hereto as Exhibit 1.

8.     The State Consent Decree contains race-based and sex-based criteria, requiring 25% of the promotions to Lieutenant, Captain, and Assistant Chief to be women or black officers.

9.      The implementation of the Consent Decree is conducted through a process known as a the rule of four.  The City enforces the quotas by looking at every four promotions or hires, and, if that group of four does not contain a woman or minority candidate, the woman or minority candidate further down the eligibility list will be chosen to fill a fifth promotion or hiring position.

10.     The practices and quotas set forth in the preceding paragraph have the practical effect of delaying, and in some cases denying, white male candidates hiring or promotion.

11.     As an example, if there were 5 captain positions open and all 5 entitled to promotion under the eligibility list were white males, all 5 of the white males would be promoted, but due to the rule of four a minority or woman candidate would be promoted as well between the fourth and fifth promotion. The problems that occur with this are several fold.  First, when the list expires, the next promotion test that is given will not be given until two additional Captains retired or departed employment due to the double fill of the female or minority candidate that was promoted from the previous list.

12.     Second, there are tangible long term employment benefits that are determined based on seniority and date of promotion, beyond the pay increase associated with the promotion.  Those tangible employment benefits include, but are by no means limited to, (i) preferences for detail and overtime pay and opportunities, which can be tens of thousands of dollars per year, (ii) preferences and eligibility for future promotions that have time in grade requirements, (iii) vacation and paid time off preferences, and (iv) preferences for shift and duty assignments.

13.     Plaintiffs will shortly suffer the adverse effects set forth in Paragraphs 11 and 12, as well as other ongoing adverse impacts from due to the failure to be promoted in a race and sex neutral

fashion, which will have lingering and ongoing effects, and which adversely impact their ability to compete for future promotions.

14.     Approximately 33 years have passed since the State Consent Decree.  In that time, the City of Cincinnati Police Department has undertaken a massive shift in demographics such that its employee makeup exceeds the targets contained in the consent decrees at issue.

15.     The City of Cincinnati does not discriminate against women and/or minorities in the hiring, training and promotion of those two groups.

16.      However, by continuing the consent decrees this long after entering into them, the City of Cincinnati does illegally discriminate against white males in hiring and promotions.

17.      The State Consent Decree, and its continuation, are the result of conscious policymaking by, among other people, Mayor John Cranley, who has directed that no actions be taken to end its continuation.  His directive has been followed to date.  As such, the State Consent Decree, and the facially race-based and sex-based discrimination contained within it, constitutes an official policy of the City of Cincinnati.

18.      Therefore, the violations of the Constitutional rights set forth herein have, as their moving force, these policies and customs.  Thus, the City of Cincinnati has liability under *Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978) for these violations.

19.     Evidence of the above is further demonstrated by the fact the current Chief of Police for the City of Cincinnati is black (and so was his immediate predecessor).  The Assistant Chiefs of Police, of whom there are five authorized (but only 3 currently occupying positions), include two females (one black male recently retired), and, upon information and belief, the Chief of Police intends to fill at least one, if not both of these vacant positions, with women or minority

candidates. Thus, minorities and women comprise 75% of the top two ranks of the Cincinnati Police Department.

20. The City of Cincinnati actively recruits, tutors, encourages, and assists minority and women candidates in applying for and passing the entrance and relevant promotional examinations. Likewise, the City of Cincinnati demonstrates an awareness of, and commitment to, the need for diversity at all levels of city government.

21. The promotional examinations administered by the City of Cincinnati does not discriminate against minorities or women.

22. As a result, there has been a substantial increase in the percentage of minority and women uniformed police officers and supervisors in the City of Cincinnati since the State Consent Decrees was entered. This increase is over and above the targets contained in the consent decrees.

23. The increase in minority and female representation within the Cincinnati Police Department, combined with the presence of minority and female leadership in the City and in the Police Department itself, as well as the existence of organizations committed to increasing their participation in the police industry, have long-ago eliminated any long-term effects of the prior lack of minority and/or female representation in the department as to ongoing hiring and/or promotion decisions.

24. The passage of time, more than 33 years for the State Consent Decree, also makes clear that due to age restrictions in the hiring criteria of police officers, there cannot possibly be anyone eligible for promotion from this date forward who was personally affected, positively or negatively, by any of the purported prior discrimination addressed by the original State Consent Decree.

25.     This same passage of time ensures that there are no longer any employees in the Cincinnati Police Department who were employed there at the time the original consent decrees were put in place. Therefore, there are no current employees in the department who have been either positively or negatively affected by any prior discrimination as alleged in the original cases.

26.     As a result of the above, there have been no challenges to the most recent entrance promotional examinations given by the City of Cincinnati, where such challenges suggest any institutional racism or any racial or sex bias, nor have there been any such challenges in at least the last decade.

Facts Common to Plaintiffs

27.     Plaintiffs are both lieutenants with the City of Cincinnati police department, and have been employed as police officers for decades.

28.     When the City of Cincinnati intends to promote, it conducts a nondiscriminatory examination and eligibility list process that includes a written examination, an oral board and other steps.  Those examinations result promotional list lasts for approximately one year.

29.     Plaintiffs took the nondiscriminatory examination for promotion to Police Captain in 2020, and on April 29, 2021, the City of Cincinnati certified its most recent Police Captain promotional list.  The top 8 from that list scored as follows:[1]

---

[1] https://www.cincinnati-oh.gov/hr/eligible-lists1/promotional/police-captain1/ (last visited 9/28/2021).

| Total Rank Sequential | Total Score | First Name | Middle Initial | Last Name | Current Department |
|---|---|---|---|---|---|
| 1 | 103.91 | DAVID | W | JOHNSTON | CPD |
| 2 | 87.58 | ADAM | D | HENNIE | CPD |
| 3 | 86.75 | STEPHEN | W | SAUNDERS | CPD |
| 4 | 86.56 | JOE | A | RICHARDSON | CPD |
| 5 | 86.30 | ANDREW | C | MITCHELL | CPD |
| 6 | 86.10 | DAVID | C | SCHOFIELD | CPD |
| 7 | 85.02 | BRIAN | | NORRIS | CPD |
| 8 | 85.02 | CHRISTOPHER | J | RUEHMER | CPD |

30.     Police Captain promotions are somewhat uncommon events.  Within the City, there are limited Captain positions, which constitute only 16 positions within the department, and vacancies tend to open only periodically.

31.     Thus far, since the list has been certified in April, there have been three vacancies, with Johnston, Hennie, and Saunders having been promoted to date.  All are white males.

32.     Another Police Captain has given notice to the City of his intended retirement on October 31, 2021, which will create the next vacancy for police Captain.  At that time, the next promotion will be filled by Joe Richardson, who is also white and male.

33.     Due solely to the 1987 State Consent Decree and its race- and sex-based quotas, the City and Mayor intend to conduct a double fill, promoting Brian Norris, a black male, ahead of both Plaintiffs Andrew Mitchell and David Schofield, solely on the basis of Norris' race, at the time that Joe Richardson is promoted.  Again, for the benefit of clarity, this will occur in just a few weeks.

34.     This double-fill, which will occur in just a few weeks, will prevent the need to promote upon the next vacancy, and will in turn then deprive Mitchell of his promotion to Captain that would otherwise occur upon that vacancy; it will likewise prevent Mitchell and Schofield seniority, preferential job assignments, and lost pay (both regular and detail pay), and, because of

the rarity of Captain vacancies, is likely to deprive one or both of them of the opportunity to be promoted at all to Captain between now and when the list expires in 2022.

35.     As an aside, and for the avoidance of all confusion, on September 15, 2021, this Court set aside similar race and sex-based quotas in a consent decree involving police officer hiring and sergeant promotions, in *United States v. City of Cincinnati*, Case No. 1:80-cv-00369, DE#198. The same considerations and law apply to the 1987 State Consent Decree.

36.     In an effort to avoid this litigation, the undersigned counsel sent a letter to the City of Cincinnati on September 24, 2021, requesting that the City confirm that it would not continue to utilize the unconstitutional race- and sex-based quotas from the 1987 Consent Decree, but the City instead gave no assurances, thus demonstrating a credible threat that it intends to discriminate on the basis of race in a short month when it double filles the next vacancy.  A true and accurate copy of that correspondence is attached as **Exhibit 2**.

37.     Finally, and statistically, the City of Cincinnati's practices have resulted in significant diversity at both the lieutenant and captain levels as well.  Of the 16 captains, 12 are male white, one is a male black, one is a female black, and two are female whites, demonstrating that 25% of the current captains meet the quotas for women and minorities set forth in the 1987 State Consent Decree.  Of the 42 lieutenants, 24 are male white, 5 are male black, 5 are female black, 7 are female white, and one is male other, demonstrating 40% of the current lieutenants meet the quotas for women and minorities set forth in the 1987 State Consent Decree.

**COUNT I – 42 USC 1983 – Equal Protection**

38.     Plaintiff reincorporates the preceding paragraphs as if fully written herein.

39.     The State Consent Decree requires the City of Cincinnati and Mayor Cranley to treat Plaintiffs differently, and negatively, from other similarly situated persons due to the race and/or

8

sex of such other persons.  Further, this difference in treatment, which the City of Cincinnati actively carries out, is not supported by a sufficiently strong governmental interest.

40.     Race-based discrimination is predicated on an immutable, protected characteristic, under which the court applies strict scrutiny.  The court will uphold the policy only if it furthers a compelling governmental interest and is narrowly tailored in doing so.  Here, the race-based classification and discrimination complained of no longer serves a compelling governmental interest and it is not narrowly tailored.

41.     Gender-based discrimination is reviewed under intermediate scrutiny, in which the challenged discrimination must serve important governmental objectives and must be substantially related to achievement of those objectives.  The gender-based discrimination herein no longer serves important governmental objectives and is not substantially related to achievement of any such objective.

42.     The aforementioned discrimination violates the Fourteenth Amendment's Equal Protection Clause, and violates clearly established rights as set forth in *Cleveland Firefighters for Fair Hiring Practices v. City of Cleveland*, 669 F.3d 737, 738-739 (6th Cir. 2012).

43.     The policy, practices and discrimination complained of will deprive Plaintiffs of benefits and compensation, including, without limitation: (i) lost pay; (ii) lost overtime pay; (iii) loss of seniority and other benefits stemming therefrom; and (iv) probable will deprive one or both Plaintiffs of their promotion to Captain.

44.     Plaintiffs seek appropriate declaratory and injunctive relief declaring the 1987 Consent Decree unconstitutional, enjoining its further use, and further seek declaratory and injunctive relief to not permit the City to promote Brian Norris ahead of the Plaintiffs in carrying out the discriminatory 1987 Consent Decree.

45.     Plaintiffs also seek reasonable compensatory and/or punitive damages for the violations of their civil rights complained of, in the event that the City promotes Brian Norris ahead of the Plaintiffs in carrying out the discriminatory 1987 Consent Decree.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as prayed for, including:

A.  That this Court issue a declaration that the challenged orders, customs, and practices are unconstitutional;

B.  That this Court enter permanent injunctive relief to prohibit enforcement of the challenged orders, customs and practices against all Defendants and appropriate injunctive relief both generally against the 1987 Consent Decree, and specifically preventing the City from promoting Brian Norris ahead of the Plaintiffs, and, if such promotion is carried out, remedial injunctive relief to restore the Plaintiffs to the position they would have held but-for the discrimination; and, as appropriate, compensatory and punitive damages;

C.  That Plaintiffs be awarded compensatory damages against the City of Cincinnati and Mayor Cranley in the amount sought herein and to be proven at trial;

D.  That Plaintiffs be awarded his costs in this action, including reasonable attorney fees against the City of Cincinnati and Mayor Cranley under 42 U.S.C. § 1988; and

E.  Such other relief as this Court shall deem just and proper.

## JURY DEMAND

Plaintiff demands trial by jury for all claims so triable.

/s/ Zachary Gottesman

Respectfully submitted,

/s/Zachary Gottesman
Zachary Gottesman (0058675)
Gottesman & Associates, LLC
404 East 12th Street
Cincinnati, Ohio 45202
Tel.:   513/651-2121
Fax:    513/568-0655
zg@zgottesmanlaw.com


/s/ Christopher Wiest
Christopher Wiest (KBA 90725)
Chris Wiest, Atty at Law, PLLC
25 Town Center Blvd, Suite 104
Crestview Hills, KY 41017
Tel:    513/257-1895
Fax:    859/495-0803
chris@cwiestlaw.com

/s/Robert J. Thumann
Robert J. Thumann (0074975)
Crehan & Thumann, LLC
404 East 12th Street, Second Floor
Cincinnati, Ohio 45202
Tel.:   513/381-5050
thumann@ctlawcincinnati.com
*Attorneys for Plaintiffs*

## VERIFICATION

Pursuant to 28 U.S.C. 1746, I, Andrew Mitchell, declare under penalty of perjury that I have read the foregoing Verified Complaint, that I am competent to testify in this matter, that the facts contained therein are true and correct, and are based information personally known and observed by me.

Executed on: ___9/28/2021___

## VERIFICATION

Pursuant to 28 U.S.C. 1746, I, David Schofield, declare under penalty of perjury that I have read the foregoing Verified Complaint, that I am competent to testify in this matter, that the facts contained therein are true and correct, and are based information personally known and observed by me.

Executed on: _____ 9/23 _____ 2021

Exhibit 1

**EXHIBIT**

COURT OF COMMON PLEAS
HAMILTON COUNTY

SENTINEL POLICE ASSOCIATION,   :    CIVIL ACTION NO. A8704567

                      :    (Niehaus, J.)

    and                :

ARTHUR HARMON             :
BURNETT WILLIAMS
JERRY KYLES                :
GEORGE EDMONDS
LONNIE MICHAEL COTTON    :
FREDDIE F. STONESTREET
RONALD TWITTY            :
    and
LEYNORICE JOHNSON       :

           Plaintiffs   :

    vs.                :

CITY OF CINCINNATI,         CONSENT DECREE

        Defendant   :

    and              :

QUEEN CITY LODGE NO. 69,
FRATERNAL ORDER OF POLICE,  :
HAMILTON COUNTY, OHIO, INC.

    Defendant-Intervenor   :



ENTERED
SEP 14 1987
IMAGE 157

    Plaintiffs in this action have alleged unlawful

discrimination against blacks and females within the Cincinnati

Police Division.  In order to avoid time consuming and costly

litigation and in order to continue ongoing efforts to

insure equal promotional opportunity within the Cincinnati Police

Division, however, the parties have agreed to resolve all claims

raised in this case by entering into this consent decree

including claims for costs and attorney fees.  This decree shall

not constitute an admission, adjudication, or finding on the merits of the case, and the defendants deny that any unlawful discrimination has occurred.

The following facts are stipulated :

a.   Twenty-six lieutenants or 67% of the total number of lieutenants in the Division were appointed from the latest police lieutenant promotion eligible list. Twenty-five of those promoted were white males and one a white female. That list expired June 25, 1987.

b.   All twenty-six promotions to the rank of lieutenant were made pursuant to the applicable provisions of R.C. 124.44, and in accordance with Section 10, Article XV, of the Ohio Constitution.

c.   Six qualified blacks were on the list but were not promoted to the rank of lieutenant by the time the list expired.

d.   The current promotion eligible list for police captain was to expire on July 11, 1987, but was extended by the court and is to expire at 12 o'clock noon on September 14, 1987.

e.   Nine captains or 64% of the total number of captains in the Division have been promoted from the current list and all of those promoted have been white males.

f.   All nine promotions to the rank of captain were made pursuant to the applicable provisions of R.C. 124.44, and in accordance with Section 10, Article XV, of the Ohio Constitution.

g.   Two qualified blacks are on the list but unlikely to be promoted to the rank of captain by the date the list will expire.

h.   No blacks or females have been promoted to the ranks of captain or lieutenant colonel and no blacks and only one female have been promoted to the rank of lieutenant since August 13, 1981. There are currently no black or female lieutenant colonels; no black or female captains; and only one female and two black lieutenants within the Cincinnati Police Division. Blacks and females have been underrepresented and currently remain underrepresented in the promoted ranks of the Cincinnati Police Division covered by this decree.



ENTERED
SEP 1 4 1987
IMAGE 158

i.  The large number of new promotions to the ranks of captain and lieutenant have reduced the possibility of openings in those ranks in the near future. Unless affirmative action is practiced with respect to promotions in those ranks, the manifest imbalance existing with respect to blacks and females in those ranks and at the rank of lieutenant colonel will continue to be present. There is a need for an affirmative action remedy.

j.  It is the purpose and intent of the decree to insure that blacks and females are not disadvantaged by promotion practices within the City of Cincinnati and that any disadvantage to blacks and females which may have resulted from any past discrimination be remedied, in accordance with the specific terms of this consent decree, so that equal promotional opportunity is provided to all.

k.  The double-fill system provided for herein is intended to be limited in duration; utilized only as set forth herein only when the normal promotional system does not result in sufficient promotions of blacks and females to the ranks affected; is statistically well-grounded; and has a minimal impact on the civil service and other rights of officers not benefiting from the double-fill system.

The long term goal of this decree is to achieve, subject to the availability of qualified applicants, a proportion of qualified blacks and females in the sworn ranks of police lieutenant, police captain, and assistant police chief (lieutenant colonel) in the Cincinnati Police Division equal to the proportion of qualified blacks and females in the labor force of the City of Cincinnati.

It is hereby ORDERED, ADJUDGED AND DECREED, with agreement of all parties:

All positions to be filled in the ranks above sergeant and below police chief in the Cincinnati Police Division shall be filled by rank order promotion from the applicable eligibility list with the following exceptions:

In the event that the results of the grading of any promotional examination results in the release of a



ENTERED
SEP 14 1987
IMAGE 159

3

promotion eligible list which fails to assure
promotions of qualified blacks and females at a level
consistent with an interim goal of approximately 25%
of the vacancies, then the City defendant shall
establish and fund such required additional positions
and promote such additional blacks and females in
rank order from the existing promotion eligible list
as are required to fulfill the interim goal.

Subsequent to the release of the next promotion eligible
lists for the ranks of police lieutenant, police captain and
assistant police chief (lieutenant colonel) in accordance
with the terms of this Decree, the required compliment for
those ranks shall be determined by the city defendant and a
"Notice of Complement" shall be prepared and posted on all
bulletin boards in all police locations, no later than one
hundred twenty (120) days prior to the expiration of the
existing promotion eligible list. Said "Notice of
Complement" shall set the authorized complement of each rank
effective the day after the expiration of the current
eligible list.

All positions in the ranks of specialist, lieutenant,
captain and assistant chief of police (lieutenant
colonel) that are established and funded pursuant to
the provisions of this decree in addition to those in
the established complement for that rank shall be
considered double-fill complement positions in
existence at the time of the release of the "Notice
of Complement" by the City defendants; provided,
however, that after the expiration of any existing
promotion eligible list, a vacancy for promotion
purposes shall not exist in the complement until such
time as the total number of persons holding the rank
of specialist, lieutenant, captain, or assistant police chief
(lieutenant colonel) falls below the complement
established by the "Notice of Complement".

Within the interim goal of promoting blacks and
females to approximately 25% of the vacancies in the
designated ranks above police sergeant, qualified
blacks and females shall be promoted first, in rank
order, and second, in a manner that reflects their
proportionate representation in the ranks eligible
for those positions in relation to each other. For
example, if among black and female candidates for
promotion the rank order is:

        1st, white female A
        2d,  black A
        3d,  white female B
        4th, black B
        5th, black C
        6th, black D
        7th, black E

4



ENTERED
SEP 14 1987
IMAGE 16D

and the proportion of blacks to females in the ranks
eligible for those positions is 4:1, double fill
promotions shall be made as follows:

```
1st, white female A
2d,  black A
3d,  black B
4th, black C
5th, black D
6th, white female B
7th, black E
```

It is understood and agreed that this provision shall
not be interpreted so as to alter the method the City
has utilized in the past in promoting blacks and
females to double-fill positions created by the
existing federal consent decree [USA v. City of
Cincinnati, U.S.D.C., S.D. OH., No. C-1-80-
369] relating to the ranks of specialist and sergeant.
By consenting to the use of this method in this
decree, the Sentinels and the individual plaintiffs
are not consenting to the use of this method under
the federal decree.

The provisions of this decree do not apply to the
position of chief of police. However, the City
should seek to apply affirmative action in an effort
to promote qualified blacks and/or females to that
position in a manner consistent with state civil
service laws.

This decree shall be implemented immediately,
including application of the decree to the current
captain promotion eligible list. For the current
captain list only the city shall promote in rank
order two white lieutenants to double fill
positions as police captains at the same time it
promotes the two black lieutenants to double fill
positions as police captains.

For the next lieutenant promotion eligible list only,
the interim goal shall be adjusted upward so as to
result in double fill promotions to the rank of
lieutenant in rank order on a ratio of one black or
female (pursuant to the guidelines at the bottom of
page four and top of page five) for every white male
promoted to a regular complement position as police
lieutenant.

During the life of the next lieutenant promotion
eligible list only, the city shall promote in rank
order seven police officers to double fill positions
as police specialists at the same time double fill
positions are filled under this decree at the ranks
of captain and lieutenant. No more than seven double



ENTERED SEP 1 4 1987 IMAGE 16

5

fill specialist positions shall be created under this provision. Double fill specialist positions created under this provision shall be in addition to, but counted as regular complement positions for the purpose of determining double fill specialist promotions to be established during this period under the decree in USA v. City of Cincinnati, U.S.D.C., S.D.OH., No. C-1-80-369.

Vacancies caused by the promotion of the two black lieutenants and two white lieutenants on the current captain promotion eligible list, as well as all vacancies created as the result of the one year double-filling requirement in the rank of police lieutenant, and all other vacancies in the sworn ranks of the police division created during the life of the next lieutenant promotion eligible list shall be filled promptly by promotions to or from all applicable lower ranks in the Cincinnati Police Division.

The promotion eligible lists for ranks above sergeant in the Cincinnati Police Division shall be valid for one (1) year or until the list is exhausted, whichever shall occur first. The complement of positions for the ranks of police specialist, sergeant, and lieutenant shall remain fixed and not be reduced until the expiration of the next lieutenant promotion eligible list following the entry of this decree. The approved and funded complement for each rank for the purpose of this provision is captain, 14, lieutenant, 39, sergeant, 120*, and specialist, 138.

[*Subject to final decision in Smith et.al. vs. City of Cincinnati, et al., USDC, CASE NO. C-1-87-0381.]

After expiration of the next lieutenant promotion eligible list, complement strength in all ranks shall be determined by the appointing authority or its designated representatives in a manner consistent with state civil service laws and the "Notice of Complement" requirements of this decree.

ENTERED
SEP 14 1987
IMAGE 162

In the event that the authorized complement for the rank of captain should be reduced prior to expiration of the next lieutenant promotion eligible list, resulting demotions and layoffs shall be made according to seniority consistent with Stotts v. Firefighters, 104 S. Ct. 2576 (1984).

Plaintiffs shall dismiss the motion to intervene and for

enforcement of the consent decree and the appeal they have initiated

in the United States District Court, Southern District of Ohio, Western Division, in Case No. C-1-80-369, and in the United States Court of Appeals, Sixth Circuit, in Case No. 87-3475, and all parties hereto expressly waive any right they may have to recover damages, costs or attorney fees through this date in either of those two proceedings or in the instant action. The Fraternal Order of Police, Queen City Lodge No. 69, agrees to dismiss the pending grievance concerning the alleged negotiations between the Sentinels and the City.

This court shall retain continuing jurisdiction of this action.

Judge

Entered this 14th day of September 1987.

JUDGE RICHARD A. NIEHAUS

DATE:

AGREED:

_A. A. Gerhardstein_
Alphonse A. Gerhardstein
Trial Attorney for Plaintiffs

_John H. Burlew_ by KKC
John H. Burlew
Attorney for Plaintiffs

_M. Kathleen Robbins_
M. Kathleen Robbins
Trial Attorney for Defendant City of Cincinnati

_Donald E. Hardin_ BY: JAY HILL H329
Donald E. Hardin
Trial Attorney for Defendant-intervenor
Queen City Lodge No. 69,
Fraternal Order of Police

ENTERED
SEP 14 1987
IMAGE 163

7

# GOTTESMAN & ASSOCIATES, LLC
### ATTORNEYS AT LAW
404 EAST TWELFTH STREET, FIRST FLOOR
CINCINNATI, OHIO 45202-7463
EMAIL: zg@zgottesmanlaw.com
TELEPHONE: 513-651-2121
FACSIMILE: 513-586-0655

24 September 2021

*Via email only*

Andrew Garth, Esq.
City Solicitor
801 Plum Street,
Cincinnati, Ohio 45202
*(Andrew.Garth@cincinnati-oh.gov)*

Paula Boggs Muething
City Manager
801 Plum Street,
Cincinnati, Ohio 45202
*(Paula.BoggsMuething@cincinnati-oh.gov)*

> **Re:** *Police Captain Eligibility List*
> *Exam No. 20-00302*

Dear Mr. Garth and Ms. Boggs-Muething:

I represent two Cincinnati Police Department Lieutenants that are currently in position to be promoted to Captain based on their rank on the Police Captain Promotional Eligibility List referenced above.

For the last forty plus years the City has implemented race-based and gender-based hiring and promotional policies that discriminate against white male officers of the police department. Those policies emanated from two separate judicial consent decrees. One Consent Decree applied to new hires and promotion to sergeant and was approved and entered by the U.S. Dist. Court for the Southern District of Ohio on Aug 13, 1981, in *United States v. City of Cincinnati, et al.*, Case No. 1:80-cv-369. The other Consent Decree applies to the promotions to lieutenant and captain and was approved and entered by the Hamilton County Court of Common Pleas on Sept. 14, 1987, in *Sentinel Police Association v. City of Cincinnati, et al.*, Case No. A8704567.

Just recently in the federal case, the U.S. Dept. of Justice filed a Motion to Modify (ECF No. 193) the Consent Decree because its continuing enforcement violated the Equal Protection Clause. On Sept. 15, 2021, Judge Dlott released a decision granting the Dept. of Justice's Motion. Specifically, she determined the City failed to establish a compelling governmental interest to support such a race-based policy and similarly failed to establish an important government interest

Andrew Garth, Esq.
Paula Boggs-Muething, Esq.
September 23, 2021
**Re:**    ***Police Captain Eligibility List***
Page 2 of 2

to justify the sex-based policy.  The analysis by Judge Dlott applies equally to the state court
Consent Decree and effectively confirms that it is unconstitutional and illegal.

Given the City's past disregard for the blatant constitutional infirmities presented by race
and gender-based promotion policies, I am going to assume that the City intends to continue to
implement these unlawful policies to the extent provided in the state court Consent Decree unless
you notify me otherwise by end of business on Sept. 27, 2021.  Absent such notification, I am
going to be filing an emergency motion for injunctive relief in federal court on Sept. 28, 2021.

Kind regards

*Zach Gottesman*

Zachary Gottesman