UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Andrew Mitchell, et al.,

    Plaintiffs,

v.

City of Cincinnati, et al.,

    Defendants.

Case No. 1:21-cv-00626

Judge Michael R. Barrett

## OPINION & ORDER

This matter is before the Court on the Emergency Motion for Restraining Order[1] and Preliminary Injunction filed by Plaintiffs Andrew Mitchell and David Schofield against Defendants City of Cincinnati ("Cincinnati") and John Cranley. (Doc. 2).

The Court held an evidentiary hearing on October 27, 2021. (Docs. 19, 22). For purposes of the hearing, the Court conditionally granted the Amended Motion to Intervene filed by Brian Norris ("Movant Norris"). (Doc. 22 PageID 465). The Court heard testimony from Eliot Isaac, the Police Chief of the Cincinnati Police Department ("CPD"); Teresa Theetge, the Executive Assistant Chief of the CPD; and Plaintiff Mitchell, Plaintiff Schofield, and Movant Norris, each Lieutenants with the CPD. (Doc. 22). The Court received Plaintiffs' Exhibits 1-4, Defendants' Exhibits A and B, and Movant Norris' Exhibit 1 into evidence. (*Id.* PageID 597-98).

The parties and Movant Norris submitted post-hearing proposed Findings of Facts and Conclusions of Law. (Docs. 23, 24, 25).

---

[1] The parties agreed, during an informal preliminary conference held on September 30, 2021, that a temporary restraining order was not necessary, and they would focus their efforts on preparing for an evidentiary hearing on Plaintiffs' Motion for Preliminary Injunction. *Cf.* S.D. Ohio Civ. R. 65.1(a).

I. **BACKGROUND**

    a. Factual

Plaintiffs are both white male Lieutenants with the CPD. (Doc. 22 PageID 534, 561). Movant Norris is an African American male Lieutenant with the CPD. (*Id.* PageID 599-600). Defendant Cincinnati is a duly chartered municipality and city within the State of Ohio and maintains the CPD. *See* (Doc. 1 ¶ 3). Defendant Cranley is the duly elected Mayor of Defendant Cincinnati and allegedly has oversight, control, and supervision over the enforcement of the 1987 Consent Decree. (*Id.* ¶¶ 4, 17).

In September 1987, the Sentinel Police Association and eight individual plaintiffs sued Defendant Cincinnati and the local chapter of the National Fraternal Order of Police ("FOP") in the Court of Common Pleas for Hamilton County, Ohio alleging unlawful discrimination against African Americans and females within the CPD who sought promotions to the ranks of Lieutenant, Captain, and Assistant Chief. PX 3. Those parties entered into a Consent Decree to settle that matter.[2] PX 3. One of the goals included in the 1987 Consent Decree was that at least 25% of the promotions made from any promotional list for the ranks of Lieutenant, Captain, and Assistant Chief are to be given to African American and/or female applicants.[3] *Id.*

The 1987 Consent Decree resulted in Defendant Cincinnati creating and implementing the following process and policies to guide promotions to, *inter alia*, the

---

[2] In 1980, the United States sued Defendant Cincinnati, the CPD, and other related entities alleging that entry-level police hiring and promotion practices illegally discriminated against African Americans and females, and, in the settlement of that case in 1981, the parties also entered into a Consent Decree. *Kohler v. City of Cincinnati*, No. 1:20-CV-889, 2021 WL 1558334, at *1 (S.D. Ohio Apr. 21, 2021). To be sure, the matter currently before the Court involves only the 1987 Consent Decree.

[3] As of September 1987, and with respect to the rank of Captain in the CPD, no African Americans or females had been promoted to the rank of Captain and thus there were no African American or female Captains. *Id.*

rank of Captain, and Defendant Cincinnati continues to use this process and these policies today. (Doc. 22 PageID 482, 590). To start, when the rank of Captain drops below its complement, a numerically ranked promotional list of eligible applicants is determined through combining the results of a competitive exam and seniority points. (*Id.* PageID 479). Promotions are then determined in order of one's rank on the promotional list, starting with the highest score, until that promotional list expires. (*Id.* PageID 480). However, after every fourth promotion in the position of Captain, the CPD reviews the race and sex of the previous four people promoted. (*Id.* PageID 482-83). This review is known as the "rule of four." (*Id.*) If no African American or female was promoted in that group of four, Defendant Cincinnati implements a "double fill" by creating and funding an additional position for the next African American or female on the promotional list. (*Id.*)

A double fill that occurs after a rule of four review does not prevent the fourth applicant's promotion; rather, a double fill creates an extra position in the rank of Captain for the next African American or female applicant on the promotional list. (*Id.* PageID 483). A double fill that occurs after a rule of four review does not count towards the complement for Captain while a promotional list is in effect; rather, a double fill position only counts towards the complement for Captain after a promotional list expires. (*Id.* PageID 490, 492, 505). Stated differently, a double fill position is not absorbed into the complement for Captain until after the relevant promotional list expires. (*Id.* PageID 490, 492, 505). Further, Defendant Cincinnati's obligation to conduct a new competitive exam, and thus to create a new promotional list, occurs when the rank of Captain drops below its complement. (*Id.* PageID 492). After any promotional list for the rank of Captain expires, prior applicants may retake the next promotional exam. (*Id.* PageID 506).

3

The current complement of Captains in the CPD is fifteen. (*Id.* PageID 494). On March 29, 2021, the CPD held competitive exam number 20-00302 for the position of Captain. PX 1. The CPD subsequently generated a promotion list for the position of Captain that is dated April 29, 2021. *Id.* This promotional list expires on May 16, 2022, *i.e.*, one year from the first promotion off the list. (Doc. 22 PageID 472-73). The first three ranked applicants on this list are white males and have already been promoted. (*Id.* PageID 484). A white male named Joe Richardson ranks 4th on the list. PX 1. Plaintiff Mitchell ranks 5th on the list. *Id.* Plaintiff Schofield ranks 6th on the list. *Id.* Movant Norris ranks 7th on the list. *Id.*

Captain Paul Broxterman retired from the CPD on October 16, 2021. (Doc. 22 PageID 485). Consequently, there is one vacancy at the rank of Captain that must be filled from the current promotional list, and Defendant Cincinnati must fill that vacancy by November 16, 2021. (*Id.* PageID 491, 611). The next in line for promotion to Captain is Joe Richardson, *i.e.*, the 4th person on the promotional list. PX 1. Pursuant to the 1987 Consent Decree, by or on November 16, 2021, Defendant Cincinnati intends to implement a double fill with Joe Richardson's promotion by creating and funding an additional position in the rank of Captain for Movant Norris, *i.e.*, the next African American or female on the promotional list, because the first three promotions off the list went to three white males, and the fourth promotion will also go to a white male.[4] (*Id.* PageID 486).

---

[4] The double fill of Movant Norris to the rank of Captain will be the first time since entering into the 1987 Consent Decree that Defendant Cincinnati has had to enforce the 1987 Consent Decree for the rank of Captain. (Doc. 22 PageID 510-11).

4

    **b. Procedural**

Plaintiffs filed their Complaint in this matter on September 29, 2021, and seek relief under 42 U.S.C. § 1983. (Doc. 1). In short, Plaintiffs allege an equal protection violation under the Fourteenth Amendment to the U.S. Constitution and argue that Defendants' continued enforcement of the 1987 Consent Decree constitutes impermissible race- and sex-discrimination against white males who seek promotions to the rank of Captain in the CPD. (*Id.*) The Complaint seeks declaratory and injunctive relief regarding the enforcement of the 1987 Consent Decree and the timing of Movant Norris' advancement to the position of Captain. (*Id.*)

Plaintiffs also filed their Motion for a Preliminary Injunction on September 29, 2021. (Doc. 2). In it, Plaintiffs reiterate their argument that the 1987 Consent Decree violates their equal protection rights and request that the Court prohibit Defendants' enforcement of the 1987 Consent Decree pending this lawsuit and preclude Movant Norris' advancement to the position of Captain before either Plaintiffs' advancement to that position. (*Id.*); *see* (Doc. 1 PageID 10).

## II. ANALYSIS

Pursuant to Federal Rule of Civil Procedure 65, a party may seek injunctive relief when it believes that it will suffer immediate and irreparable injury, loss, or damage. "A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries [its] burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban County Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). "The purpose of a preliminary injunction is to preserve the status quo until a trial on the merits." *Kohler v. City of Cincinnati*, No. 1:20-CV-889, 2021 WL 761630, at *4 (S.D. Ohio

Feb. 27, 2021), *report and recommendation adopted*, No. 1:20-CV-889, 2021 WL 1558334 (S.D. Ohio Apr. 21, 2021) (quoting *S. Glazer's Distributors of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 848-49 (6th Cir. 2017)).

In considering whether to grant a preliminary injunction, the court considers four elements: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction." *City of Pontiac Retired Emples. Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014) (per curiam).

With respect to the first element, "success on the merits encompasses success not only on 'substantive theories' but also in establishing 'jurisdiction' and 'standing.'" *Kohler*, 2021 WL 761630, at *6 (quoting *Waskul v. Washtenaw Cty. Cmty. Mental Health*, 900 F.3d 250, 256 n.4 (6th Cir. 2018)). "To establish standing, a plaintiff must show an injury in fact that is fairly traceable to the defendant's conduct and is likely to be redressed by a favorable judicial decision." *Kohler v. City of Cincinnati*, No. 21-3466, slip. op. at 3 (6th Cir. Nov. 1, 2021) (quoting *Memphis A. Philip Randolph Inst. v. Hargett*, 978 F.3d 378, 386 (6th Cir. 2020)). "[A] party who fails to show a 'substantial likelihood' of standing is not entitled to a preliminary injunction." *Id.* (quoting *Hargett*, 978 F.3d at 386). "However, an inability to establish a substantial likelihood of standing requires denial of the motion for preliminary injunction, not dismissal of the case." *Id.* (quoting *Hargett*, 978 F.3d at 386).

With respect to the second element that courts consider in determining whether to grant a preliminary injunction, *i.e.*, the irreparable-injury requirement, "a plaintiff must

6

show more than is required to establish standing to seek such relief." *Kohler*, slip. op. at 3 (first citing *Taylor v. Resolution Tr. Corp.*, 56 F.3d 1497, 1508 (D.C. Cir. 1995); then citing *Assoc. Gen. Contractors of Cal., Inc. v. Coal. for Econ. Equity*, 950 F.2d 1401, 1410 (9th Cir. 1991)). To satisfy the irreparable-injury requirement, an injury must be both certain and immediate, not speculative or theoretical. *Id.*, slip. op. at 4 (quoting *Hargett*, 978 F.3d at 391) (internal quotation marks omitted). "Irreparable harm is an 'indispensable' requirement for a preliminary injunction, and 'even the strongest showing' on the other factors cannot justify a preliminary injunction if there is no 'imminent and irreparable injury.'" *Id.*, slip. op. at 3-4 (quoting *Hargett*, 978 F.3d at 391; *accord D.T. v. Sumner Cty. Sch.*, 942 F.3d 324, 327 (6th Cir. 2019) (explaining that the irreparable harm "factor is indispensable: If the plaintiff isn't facing imminent and irreparable injury, there's no need to grant relief *now* as opposed to at the end of the lawsuit.") (emphasis in original).

Even assuming, without deciding, that Plaintiffs can establish a likelihood of success on the merits, as to both their standing and substantive argument, Plaintiffs fail to establish that they are likely to suffer irreparable harm, and this failure is dispositive to their Motion for Preliminary Injunction. *See Hargett*, 978 F.3d at 391; *D.T.*, 942 F.3d at 327; *Kohler*, slip. op. at 4.

Although Plaintiffs' lawsuit asks the Court to declare the 1987 Consent Decree unconstitutional, Plaintiffs' Motion for Preliminary Injunction asks the Court to prohibit Defendants' enforcement of the 1987 Consent Decree pending this lawsuit and, by doing so, preclude Movant Norris from advancing to the position of Captain via a double fill or before either Plaintiff. (Doc. 2); *see* (Doc. 1 PageID 10). However, without the

1987 Consent Decree in place, neither Plaintiff would advance to the position of Captain by or on November 16, 2021 to fill the vacancy left by Captain Broxterman. (Doc. 22 PageID 507). Indeed, without the 1987 Consent Decree in place, Plaintiffs' counsel agreed that it is "speculative" and "there is no certainty" to try to ascertain when either Plaintiff will advance to the rank of Captain, as it could be "any time between now and May [16, 2022]" (*id.* PageID 476), or never.

Acknowledging that there is no way to predict if there will be another vacancy for Captain before the current promotional list expires on May 16, 2022, with or without the 1987 Consent Decree, if another vacancy occurs before then, Plaintiff Mitchell will be promoted due to his numerical rank on the list. (*Id.* PageID 490, 492, 505, 514). Similarly, with or without the 1987 Consent Decree, if an additional vacancy occurs before May 16, 2022, and after the hypothetical vacancy just contemplated for Plaintiff Mitchell, Plaintiff Schofield will be promoted. *See* (*id.* PageID 490, 492, 505, 514). Thus, with or without the 1987 Consent Decree, if two vacancies occur before May 16, 2022, both Plaintiffs will be promoted. And both of these hypothetical promotions would occur regardless of whether Movant Norris advances to the rank of Captain as a double fill with Joe Richardson. (*Id.* PageID 548).

With the 1987 Consent Decree in place, the only time that Movant Norris' double fill impacts Plaintiffs is if the following chain of events occur: Plaintiffs are not each promoted before May 16, 2022; the current promotional list expires on May 16, 2022; a vacancy occurs; Defendant Cincinnati does not hold a promotional exam until Movant Norris' double fill is absorbed; Movant Norris' double fill is absorbed; a vacancy occurs that brings the complement for the rank of Captain below 15; Defendant Cincinnati holds

a promotional exam; Plaintiffs each take that exam;[5] and Plaintiffs each do well enough on that exam to be numerically ranked highly enough such that each Plaintiff is then promoted in the span of that promotional list's existence. *See* (*id.* PageID 558-59).

In light of the above, the Court finds that, without the 1987 Consent Decree in place—their requested relief—Plaintiffs cannot establish harm. The Court finds that, with 1987 Consent Decree in place—the status quo—Plaintiffs might be able establish harm, but any such harm is both speculative and theoretical and neither certain nor immediate at this time. The Court further finds that Movant Norris' advancement to the position of Captain via a double fill by or on November 16, 2021 does not constitute irreparable harm to Plaintiffs.

Plaintiffs rely on *Vitolo v. Guzman*, 999 F.3d 353 (6th Cir. 2021), to argue that the Court must presume irreparable harm because they allege a violation of their equal protection rights. (Doc. 2 PageID 41-44), (Doc. 22 PageID 559-60), (Doc. 24 PageID 635-36, 638-39). Their reliance is misplaced. "When an alleged deprivation of a constitutional right is involved, . . . most courts hold that no further showing of irreparable injury is necessary." *Kohler*, slip. op. at 4 (quoting 11A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2948.1 (3d ed. 2021) (footnotes omitted)). However, "this statement relates only to the irreparability aspect of the alleged injury, not to its imminence." *Id.* (first quoting *Pinson v. Pacheco*, 397 F. App'x 488, 492 (10th Cir. 2010); then citing *Hargett*, 978 F.3d at 391). In *Vitolo*, the plaintiffs appealed the district court's denial of their motion for preliminary injunction requesting that the district court prohibit the Small Business Administration ("SBA") from handing out grants

---

[5] Plaintiffs testified that they intend to test again if they are not promoted by May 16, 2022. (*Id.* PageID 544, 567).

under the Restaurant Revitalization Fund, part of the American Rescue Plan Act of 2021 that Congress passed in light of the on-going coronavirus, based on the grant applicants' race and sex. 999 F.3d at 358. The U.S. Court of Appeals for the Sixth Circuit ("Sixth Circuit") held that the plaintiffs were entitled to an injunction pending appeal, as it found that the plaintiffs had established a likelihood of success on the merits and irreparable harm. *Id.* at 365. On the latter finding, the Sixth Circuit emphasized that the plaintiffs continued to suffer a real and concrete injury by having the SBA consider grant applications based on race and sex and the irreparable harm was imminent, as the SBA allocated grants from limited coronavirus relief funds, those funds were rapidly depleting when the plaintiffs filed their motion for preliminary injunction, and there was a real risk that the funds would run out and the plaintiffs would receive no funds unless the SBA processed the plaintiffs' grant application immediately. *Id.* at 356, 358, 360, 363. The Sixth Circuit found that the ongoing rapid depletion of limited funds happening concurrently with the plaintiffs' filing of their motion for preliminary injunction established the requisite imminence and immediacy for imposing a preliminary injunction pending appeal. *Id.* at 365. Here, in contrast and for the reasons detailed above, the Court finds that Plaintiffs do not establish the requisite imminence and immediacy for granting a preliminary injunction. *See Kohler*, slip. op. at 4.

Similarly, Plaintiffs' argument is misplaced to the extent that they argue that they have established a sufficient injury or irreparable harm because, *if* they are promoted off the current promotional list, *then* they will have less seniority than Movant Norris which *could* influence when Plaintiffs are able to take future vacations. (Doc. 24 PageID 630 ¶¶ 30-31) (citing DX B at Page 25). A loss of seniority for hypothetical vacation purposes

10

"falls far short of the type of irreparable injury which is a necessary predicate to the issuance of a" preliminary injunction. *Sampson v. Murray*, 415 U.S. 61, 91-92 (1974); *accord Kohler*, slip. op. at 4-5. Rather, a loss of seniority for hypothetical vacation purposes can be remedied in the ordinary course of litigation.[6]

Finally, and although the Court need not discuss the third and fourth elements[7] that courts consider in determining whether to grant a preliminary injunction, *i.e.*, substantial harm to others and the public interest, in light of Plaintiffs' failure to demonstrate irreparable harm, the Court notes that it "will not upend on preliminary injunction more than [thirty] years of effort to rebalance the scales of racial and sex based equity in police [ ] promotions. The vital public interest here deserves a thoughtful and thorough approach to ensure that CPD [ ] promotes all qualified candidates fairly and constitutionally." *Kohler*, 2021 WL 1558334, at *5.

### III. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Plaintiffs' Motion for a Preliminary Injunction is (Doc. 2) is **DENIED**.

**IT IS SO ORDERED.**   \_/s Michael R. Barrett_____
Michael R. Barrett, Judge
United States District Court

---

[6] "If the evidence ultimately proves [Plaintiffs] w[ere] treated illegally, the promotion dates can be retroactively adjusted and any lost wages, loss of seniority-related benefits, or delayed promotional or other opportunities can be compensated at that time." *Kohler*, 2021 WL 1558334, at *4.

[7] These two elements "merge when the government is the opposing party." *Id.* at *13.