**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT
100 EAST FIFTH STREET, ROOM 540
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

Deborah S. Hunt
Clerk

Tel. (513) 564-7000
www.ca6.uscourts.gov

Filed: September 29, 2022

Ms. Donyetta D. Bailey
Law Office
312 Walnut Street, Suite 1600
Cincinnati, OH 45202

Mr. Thomas Bernard Bruns
Bruns, Connell, Vollmar & Armstrong
4555 Lake Forest Drive, Suite 330
Cincinnati, OH 45242

Mr. Zachary Gottesman
Gottesman & Associates
404 E. 12th Street, First Floor
Cincinnati, OH 45202

Mr. William Christopher Hicks
Ms. Shannon Price
Ms. Emily Elizabeth Woerner
City of Cincinnati Law Department
801 Plum Street, Suite 214
Cincinnati, OH 45202

Mr. Christopher David Wiest
Law Office
25 Town Center Boulevard, Suite 104
Crestview Hills, KY 41017

Re: Case No. 21-4061, *Mitchell, et al. v. City of Cincinnati, Ohio, et al.*
Originating Case No. : 1:21-cv-00626

Dear Counsel,

The Court issued the enclosed opinion today in this case.

Enclosed are the court's unpublished opinion and judgment, entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

Sincerely yours,

s/Laurie A Weitendorf
Opinions Deputy

cc: Mr. Richard W. Nagel

Enclosures

Mandate to issue

NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0389n.06

No. 21-4061

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Sep 29, 2022
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| ANDREW MITCHELL; DAVID SCHOFIELD, | |
|     Plaintiffs-Appellants, | |
| v. | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO |
| CITY OF CINCINNATI; AFTAB PUREVAL, | |
|     Defendants-Appellees, | |
| BRIAN NORRIS, | OPINION |
|     Intervenor-Appellee. | |

Before: GIBBONS, ROGERS, and MURPHY, Circuit Judges.

ROGERS, J., delivered the opinion of the court in which GIBBONS, J., joined. MURPHY, J. (pp. 9–16), delivered a separate opinion concurring in the judgment.

ROGERS, Circuit Judge. Plaintiffs Andrew Mitchell and David Schofield, two white men, filed suit against the City of Cincinnati and Mayor John Cranley under 42 U.S.C. § 1983, arguing that the pro-diversity promotion policies of the police department violate the Fourteenth Amendment's Equal Protection Clause. The plaintiffs challenge the "rule of four," which creates a new captain position for a Black or female applicant if the previous four officers promoted to captain did not include any Black or female officers. Plaintiffs sought to enjoin the promotion of a Black candidate to such a new position even though such an injunction might never result in the promotion of either plaintiff. The district court properly denied the plaintiffs' motion for a preliminary injunction due to the plaintiffs' failure to demonstrate imminent harm.

No. 21-4061, *Mitchell, et al. v. City of Cincinnati, et al.*

The City of Cincinnati has a ranking system that determines when lieutenants in the police department are promoted to the rank of captain. There are typically fifteen captains, and when the "complement" of captains drops below fifteen due to a retirement or other departure, the city must hold a promotional exam. The lieutenants who sat for the promotional exam are then ranked on a list based on a combination of their exam grade and seniority points. When a captain vacancy occurs, the top-ranked lieutenant on the list is promoted, and the city pulls from the list (following the order of the rankings) to fill further vacancies that may occur. The list expires one year after the date of the first promotion from the list. If all fifteen captain spots have been filled, a new promotional exam is not held until the complement once again drops below fifteen at a future date. Once a future vacancy occurs, a promotional exam is held to create a new list, and lieutenants who were not promoted from the expired list must sit for the exam again if they want to be included on the new list.

In 1987, the city entered into the Consent Decree to settle a lawsuit alleging discrimination against Black and female officers. This Consent Decree establishes the "rule of four," which alters the above procedure by providing that if the four previous officers promoted to the rank of captain from a list were all white men, then at the time of the promotion of the fourth officer, an additional captain position will be created and filled by the highest-ranked female or Black officer on the list. This creation of an extra captain position is referred to as a "double-fill." The additional captain position is not counted towards the complement of captains while the relevant list is in effect. As a result, the use of a double-fill on a particular promotion list does not impact the promotion of other officers from the same list, because a subsequent departure before the list expires would still create a vacancy and an accompanying promotion.

2

No. 21-4061, *Mitchell, et al. v. City of Cincinnati, et al.*

    The plaintiffs took the promotional exam in March 2021. On the resulting list (the "spring 2021 promotion list"), plaintiff Mitchell was ranked fifth, and plaintiff Schofield ranked sixth. Intervenor Brian Norris, a Black officer, ranked seventh on the list. The first promotion from the list occurred on May 16, 2021. The candidates ranked first through third on the spring 2021 list were also all promoted in May 2021. The next captain vacancy occurred in October 2021, and the fourth officer on the list was promoted to captain. The promotion of the fourth officer triggered the rule of four, because the first four officers on the list were all white men. Accordingly, the city created an extra captain position and promoted intervenor Norris at the same time that the fourth officer was promoted. Norris's promotion increased the number of captains to sixteen, but the complement remained fixed at fifteen for the duration of the spring 2021 promotion list. If a fifth vacancy had occurred during the duration of the spring 2021 promotion list, it would have gone to plaintiff Mitchell as the fifth-ranked officer on the list. However, the spring 2021 list expired on May 16, 2022 before any further vacancies occurred, so neither plaintiff was promoted from the list.

    When the spring 2021 list expired in May 2022, the double-fill position was "absorbed into the complement," meaning that Norris's spot began to count towards the complement of fifteen captains. The result is that when the next vacancy occurs, there will not be a new examination and promotion from the resulting list, because the number of captains (fifteen including Norris) will not have dropped below the complement. A new examination and promotion will not occur until the following vacancy brings the number of captains to fourteen, so the absorption in effect delays the next promotion by the amount of time that passes between the first and second vacancies. When the second vacancy occurs, both plaintiffs will need to retake the promotional exam to be placed on the new list, and any vacancies that open up will be filled in order from the new list until

3

No. 21-4061, *Mitchell, et al. v. City of Cincinnati, et al.*

it expires. The police chief estimated that the promotional exam is held "on average every [eighteen] months to two years," and said that performance on a previous exam is not a predictor of success on a later exam.

Plaintiffs Mitchell and Schofield filed suit under 42 U.S.C. § 1983 against the City of Cincinnati and Mayor John Cranley, alleging that the promotional process violates the Equal Protection Clause of the Fourteenth Amendment. The plaintiffs sought declaratory and injunctive relief, as well as compensatory damages. The district court granted Brian Norris's motion to intervene. The court denied the plaintiffs' motion for a preliminary injunction based on the court's conclusion that the plaintiffs were unable to meet the irreparable injury requirement. The court noted that even if the Consent Decree did not exist, neither plaintiff would have been promoted to captain to fill the October 2021 vacancy, and if there had been any further vacancies before the list expired, the plaintiffs would have been promoted in order based on their rank. Accordingly, the court concluded that the plaintiffs would only be impacted if a speculative sequence of future events occurred, including a future vacancy and the plaintiffs' future decision to retake the promotional exam. The court thus held that "[p]laintiffs might be able to establish harm, but any such harm is both speculative and theoretical and neither certain nor immediate at this time."

A motions panel of the Sixth Circuit denied the plaintiffs' motion for an injunction pending appeal. The panel held that the district court did not abuse its discretion by denying the preliminary injunction based on the lack of irreparable injury. The panel concluded that the plaintiffs' injuries were not imminent because "the parties cannot predict whether [p]laintiffs will be promoted from the current list before it expires on May 16, 2022, because future promotions hinge on a number of undetermined factors," and "[i]f there are additional vacancies before the list expires, one or both [p]laintiffs will be promoted regardless of the double fill."

No. 21-4061, *Mitchell, et al. v. City of Cincinnati, et al.*

The plaintiffs are not entitled to a preliminary injunction because they have not shown a threat of imminent harm, which is required as part of the irreparable injury prong. "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Sunless, Inc. v. Palm Beach Tan, Inc.*, 33 F.4th 866, 868 (6th Cir. 2022) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). "Even the strongest showing on the other three factors cannot 'eliminate the irreparable harm requirement.'" *D.T. v. Sumner Cnty. Sch.*, 942 F.3d 324, 326-27 (6th Cir. 2019) (quoting *Friendship Materials, Inc. v. Mich. Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982)). The irreparable harm prong also requires the injury to be imminent, meaning that the plaintiffs' injury be "both certain and immediate, not speculative or theoretical." *Memphis A. Philip Randolph Inst. v. Hargett*, 978 F.3d 378, 391 (6th Cir. 2020) (quoting *Sumner Cnty. Sch.*, 942 F.3d at 327 (internal quotations omitted)).

The plaintiffs cannot show imminence because they have not yet been injured, and a speculative chain of events must occur before they are injured in the future. First, it was not an abuse of discretion for the district court to conclude that the plaintiffs have not yet been injured. The plaintiffs were ranked fifth and sixth on the spring 2021 promotion list, but only four vacancies became available. The first four people on the list were accordingly promoted ahead of both plaintiffs. The double-fill rule, which was used to create an extra captain position to promote Norris (who had been ranked seventh on the list), did not impact either plaintiff's potential promotion. The double-fill created an *extra* position for Norris, outside of the existing complement of fifteen captains, so Norris was not moved ahead on the list or promoted ahead of the plaintiffs. Without the Consent Decree and the double-fill rule, the plaintiffs still would not have been

5

No. 21-4061, *Mitchell, et al. v. City of Cincinnati, et al.*

promoted, because only four vacancies occurred and plaintiffs were ranked fifth and sixth on the list.[1] If there had been further vacancies during the duration of the spring 2021 promotion list, the plaintiffs would have been promoted in order according to their position on the list.

Second, the district court did not abuse its discretion when it concluded that the plaintiffs' potential future injury is too speculative to satisfy the irreparable injury requirement. A speculative chain of events must occur here before the plaintiffs are injured. As explained above, the plaintiffs

---

[1] Plaintiffs argue that the extra spot created by the Consent Decree should essentially be treated as a sixteenth captain spot that could be filled by any prospective captain. In that case, the argument goes, the new captain position should go to plaintiff Mitchell (who is next in line on the list), so Norris's promotion necessarily involved ignoring the order and skipping over Mitchell. That argument has a basic flaw—the relevant point of comparison is what would have occurred if the Consent Decree did not exist, and in the absence of the Consent Decree, there would only have been four openings that would have been filled by the first four candidates on the list, not the plaintiffs. At oral argument, the plaintiffs further asserted that vacant senior leadership positions at the police department could create more captain openings if captains were promoted. But the plaintiffs did not develop that argument in their opening brief, and the failure to raise an argument in an opening brief forfeits that argument, *see Island Creek Coal Co. v. Wilkerson*, 910 F.3d 254, 256 (6th Cir. 2018). In any event, the fact remains that only four vacancies occurred during the duration of the spring 2021 promotion list and so the plaintiffs would not have been promoted during the ordinary operation of the list.

The concurring opinion presents two hypotheticals that effectively suggest the following question: Why isn't the creation of a new captain slot exclusively for a minority analogous to a simple grant of an employment benefit for which only whites are eligible? The concurrence gives a Jim Crow example where a new temporary position is only open to whites, and an employment-benefit example of an award bonus that is available only to whites. Such actions would surely be unconstitutional, and Black employees who might get the benefit absent the racist requirement presumably have standing to challenge it. But that does not mean that the Black employee is necessarily entitled to a preliminary injunction based on imminent harm to him, before or after the benefit is actually awarded to the white person. The final order in the case might order the white beneficiary to give up the benefit, might instead give the Black plaintiff the chance to apply for the benefit, or might provide some other type of relief. None of these possibilities is certain to be imposed, even though we know in advance that the practice is clearly unconstitutional. That is the situation in this case as well, if for purposes of this appeal we assume the unconstitutionality of filling the created slot with a Black employee. The plaintiffs as movants for preliminary relief would not necessarily obtain in the end the relief that is preliminarily sought. Thus, the plaintiffs have not shown that their chance to remedy the injury to them would be irreparably lost if relief is not granted preliminarily.

6

No. 21-4061, *Mitchell, et al. v. City of Cincinnati, et al.*

would not have been promoted during the duration of the spring 2021 promotion list even without the Consent Decree in place, because there were only four vacancies and the plaintiffs were ranked fifth and sixth on the list.

As for later injury, the plaintiffs rely on the injury they claim will occur during the *next* promotional cycle, but that injury requires a sequence of speculative events to occur. First, another captain vacancy has to actually occur. Both parties agree that it is difficult to predict when the next vacancy may occur. Given that there are currently sixteen captains (five of whom were recently promoted), it is possible that a lengthy delay could occur before another captain retires or otherwise departs. Upon the next vacancy, Norris's position will be absorbed into the complement and the next promotional exam might be delayed. There is no guarantee that such a delay would occur—it is possible that two vacancies could occur around the same time and so the promotional exam would not be delayed at all.[2] The district court described the full chain of events as follows:

> a vacancy occurs; Defendant Cincinnati does not hold a promotional exam until Movant Norris' double fill is absorbed [by the next vacancy]; Movant Norris' double fill is absorbed [i.e., the extra space is not filled]; a [subsequent] vacancy occurs that brings the complement for the rank of Captain below 15; Defendant Cincinnati holds a promotional exam; Plaintiffs each take that exam; and Plaintiffs each do well enough on that exam to be numerically ranked highly enough such that each Plaintiff is then promoted in the span of that promotional list's existence.

R.27, PID.720-21.

It was not an abuse of discretion for the district court to conclude that given the speculative chain of events that must occur, the plaintiffs have failed to demonstrate the imminence required. As we explained in *D.T. v. Sumner County Schools*, "[i]f the plaintiff isn't facing imminent and irreparable injury, there's no need to grant relief *now* as opposed to at the end of the lawsuit."

---

[2] For example, the candidates ranked first through third on the spring 2021 list were all promoted on the same day in May 2021 due to multiple vacancies.

No. 21-4061, *Mitchell, et al. v. City of Cincinnati, et al.*

942 F.3d at 327. We held that the plaintiffs could not meet the imminence requirement because the chain of events leading to injury would be "*if* D.T. regresses at his new private school, and *if* they choose to disenroll him, and *if* they choose not to enroll him in another state-approved school, the state *may* choose to prosecute them for truancy again." *Id*. Consequently, this court held that "all those 'ifs' rule out the 'certain and immediate' harm needed for a preliminary injunction." *Id*.

It is true that "[w]hen constitutional rights are threatened or impaired, irreparable injury is presumed." *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012). That presumption of irreparability, however, does not change the fact that the plaintiff must still demonstrate imminence. *See Memphis A. Philip Randolph Inst.*, 978 F.3d at 391); *see also Kohler v. City of Cincinnati*, No. 21-3466, slip. op. at 4 (6th Cir. Nov. 1, 2021). "A preliminary injunction is an extraordinary remedy never awarded as of right," *Winter*, 555 U.S. at 24, so a lack of imminence does not justify such an "extraordinary remedy" when relief can be granted at the close of litigation.

We do not address the merits of the plaintiffs' constitutional claim, or whether equity or the terms of the consent decree may warrant termination of that decree. Nor do we address whether plaintiffs had standing to pursue such claims, which is a component of the likelihood of success on the merits. "When one [preliminary injunction] factor is dispositive, a district court need not consider the others . . . Thus, a district court is 'well within its province' when it denies a preliminary injunction based solely on the lack of an irreparable injury." *Sumner Cnty. Sch.*, 942 F.3d at 327 (citations omitted).

We affirm the judgment of the district court.

No. 21-4061, *Mitchell, et al. v. City of Cincinnati, et al.*

MURPHY, Circuit Judge, concurring in the judgment. A Consent Decree adopted in 1987 continues to require the Cincinnati Police Department to follow a unique promotion procedure that relies on a police officer's race and sex in certain situations. This Decree predates most of the Supreme Court's modern jurisprudence ordering courts to apply heightened equal-protection scrutiny to race- and sex-based classifications. *See United States v. Virginia*, 518 U.S. 515, 531 (1996); *Adarand Constructors, Inc. v. Peña*, 515 U.S. 200, 223–24 (1995); *Richmond v. J.A. Croson Co.*, 488 U.S. 469, 493–94 (1989) (plurality opinion). So it is perhaps unsurprising that Cincinnati has not defended the Decree's constitutionality on appeal. This appeal instead requires us to consider whether Plaintiffs Andrew Mitchell and David Schofield have shown the need for a preliminary injunction even assuming the Decree's unconstitutionality.

I agree with my colleagues that we should affirm the district court's denial of preliminary relief. But my reasoning differs in an important respect. In my view, Mitchell and Schofield were at risk of suffering an irreparable injury from the Department's imminent use of this Consent Decree when the district court denied the injunction. Yet that injury has already occurred. And the officers have not explained why they are *now* entitled to preliminary relief for this past injury. At the same time, the officers have failed to establish that they face a sufficiently immediate risk of suffering this same injury again, such that they need a preliminary injunction during the course of this litigation (instead of a permanent injunction at its end).

\*

I start with the past injury. The Cincinnati Police Department has fifteen "captain" positions. When a position opens up, the Department holds a competitive exam. It creates a numeric list that ranks all applicants based on a mix of their exam results and seniority. The highest-ranked candidate fills the vacant position. The Department uses this same list to fill all

9

No. 21-4061, *Mitchell, et al. v. City of Cincinnati, et al.*

additional captain vacancies that arise within a year of the first promotion, choosing the next highest-ranked candidate each time. If three more vacancies occur over that year and if white males fill all four positions, the Department creates a temporary "sixteenth" captain position for the highest-ranking African American or female candidate. If a fifth vacancy arises before this list expires, the next highest-ranking candidate still gets to fill that permanent spot. But if no additional vacancies occur before the list expires, the African American or female candidate who obtained the temporary position fills the next permanent captain vacancy (and the temporary position expires). Under this "rule of four," then, the Department effectively relies on a candidate's race or sex to "pre-fill" a future permanent vacancy; it does not follow the normal competitive process.

The Department's rule of four was triggered in October 2021 after a fourth captain position became vacant in a year. Mitchell and Schofield ranked fifth and sixth on the then-existing (but now-expired) list. Brian Norris, an African American, ranked seventh. When the Department announced that it intended to promote Norris to the temporary sixteenth captain position, Mitchell and Schofield sought a preliminary injunction to enjoin the Department's imminent use of the rule of four. The district court denied a preliminary injunction on the ground that Mitchell and Schofield failed to show that they were about to suffer the irreparable harm required to justify that relief. *Mitchell v. City of Cincinnati*, 2021 WL 5299799, at *4 (S.D. Ohio Nov. 14, 2021). Mitchell and Schofield appealed, we denied an injunction pending appeal, and Norris has since become a captain under the rule of four.

In a thoughtful opinion, my colleagues agree that Mitchell and Schofield did not meet the "irreparable injury" requirement for obtaining a preliminary injunction. *See, e.g.*, *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 21–22 (2008); *D.T. v. Sumner Cnty. Schs.*, 942 F.3d 324, 327 (6th Cir. 2019). They reason that the Department's past use of the rule of four did not harm

No. 21-4061, *Mitchell, et al. v. City of Cincinnati, et al.*

Mitchell and Schofield because this rule would not have stopped their promotion if another captain vacancy had arisen in the year that the promotion list remained valid. Even if the Department had ignored the rule of four, they add, Mitchell and Schofield still would not have been promoted.

I respectfully disagree because this analysis views the harm from the Consent Decree's race-based classification in only *tangible* terms. An employment-related harm like the lack of a promotion certainly qualifies as a cognizable injury redressable in court. *See Charlton-Perkins v. Univ. of Cincinnati*, 35 F.4th 1053, 1059 (6th Cir. 2022). Yet a government's unequal treatment of an individual based on the individual's race qualifies as an independent *intangible* injury—whether or not the individual would have obtained the sought-after employment benefit under a race-neutral system. *See Ne. Fla. Chapter, Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993); *Vitolo v. Guzman*, 999 F.3d 353, 358–59 (6th Cir. 2021); *see also Hassan v. City of New York*, 804 F.3d 277, 289–90, 289 n.1 (3rd Cir. 2015) (citing cases).

This purported equal-protection violation is not much different than other alleged constitutional violations that can establish intangible (yet concrete) injuries. *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021). One person, for example, might face a risk of an imminent injury if the government pressures her not to speak, whether or not the alleged free-speech violation will produce additional economic harm. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016) (citing *Pleasant Grove City v. Summum*, 555 U.S. 460 (2009)). Another person might suffer a risk of an imminent injury if the government pressures him to violate his religious beliefs, again whether or not the alleged free-exercise violation will generate some other loss. *See id.* (citing *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993)).

When Mitchell and Schofield sought a preliminary injunction in the district court, they faced an imminent risk of this type of intangible harm. The Department's pending use of the rule

11

No. 21-4061, *Mitchell, et al. v. City of Cincinnati, et al.*

of four "forced" these officers to compete "in a race-based system" that disadvantaged them. *Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 719 (2007). Ultimately, the Department inflicted this equal-protection injury in November 2021 on the day after the district court denied a preliminary injunction and more than six weeks after Mitchell and Schofield moved for one. So an injunction barring the Department from using the rule could have (and would have) prevented this distinct injury—whether or not Mitchell and Schofield would have obtained a promotion in a race-neutral system. *See Barr v. Am. Ass'n of Political Consultants, Inc.*, 140 S. Ct. 2335, 2355 (2020) (plurality opinion); *see also Ne. Fla. Chapter*, 508 U.S. at 666.

A couple of analogies reinforce my point. Suppose a city operated a political-patronage "rule of four" that created a temporary position for a lower-ranked Republican officer if a merits-based system led to the hiring of several Democratic officers. I would think that the threatened use of this rule would create an intangible speech injury for Democratic officers whether or not they would have obtained a promotion otherwise. *Cf. Rutan v. Republican Party of Ill.*, 497 U.S. 62, 69–76 (1990); *Elrod v. Burns*, 427 U.S. 347, 355–73 (1976) (plurality opinion). Or suppose a city in the Jim Crow era followed a patently racist "rule of four" that created a temporary position for a white male candidate when merits-based considerations led to the promotion of several diverse candidates. Here again, I would think that the minority candidates would face an imminent equal-protection injury (and that a district court would swiftly enjoin this racist rule if the city attempted to enforce it).

In all events, Mitchell and Schofield also faced an imminent *tangible* injury when the district court denied the injunction. To be sure, the Department's use of the rule of four did not cause Mitchell and Schofield to lose a promotion to a permanent captain position because, as my colleagues correctly note, the rule did not prevent them from getting promoted if other vacancies

12

arose while the then-existing list remained operable. Mitchell and Schofield also would not have received such a promotion even if the Department had ignored the rule of four. But Mitchell and Schofield's inability to apply for—let alone obtain—the "temporary" captain position was *itself* a tangible employment injury. If the Cincinnati Police Department gave a $10,000 bonus only to officers of a certain race, I doubt we would hold that officers of other races faced no economic injury because they would not have gotten the bonus in a world in which the bonus policy "did not exist." Maj. Op. 6 n.1. As in other cases in which unequal treatment is the injury, there may be tricky questions about the remedy (whether to extend the benefit to all or deny it to all), but there would be no doubt about the injury. *See Am. Ass'n of Political Consultants*, 140 S. Ct. at 2354–56 (plurality opinion). I do not see why this case should be different. In short, Mitchell and Schofield were about to suffer tangible and intangible injuries alike when the district court denied a preliminary injunction.

To obtain that injunction, however, Mitchell and Schofield needed to show more than an *immediate* injury; they also needed to show an *irreparable* one. *See Winter*, 555 U.S. 21–22. They met this separate element because a constitutional violation has long qualified as the type of irreparable injury that justifies preliminary relief, and the Department does not defend the rule of four on its constitutional merits in this appeal. "[W]hen constitutional rights are threatened or impaired," we have held, "irreparable injury is presumed." *Vitolo*, 999 F.3d at 360 (quoting *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012)); *Newsom v. Norris*, 888 F.2d 371, 378–79 (6th Cir. 1989); *see also* 11A Charles A. Wright et al., *Federal Practice and Procedure* § 2948.1, at 159–62 & nn.24–26 (3d ed. 2013) (citing cases). As far as I can tell, this remedial rule dates back to the Supreme Court's decision holding that a government employer's patronage-based dismissal of a public employee violated the First Amendment. *See Elrod*, 427 U.S. at 373

No. 21-4061, *Mitchell, et al. v. City of Cincinnati, et al.*

(plurality opinion). Even if employment-related harms are reparable by an award of damages, *see Sampson v. Murray*, 415 U.S. 61, 88–90 (1974), the Court reasoned that damages alone cannot sufficiently redress the intangible free-speech harms that arise from an unconstitutional patronage system, *see Elrod*, 427 U.S. at 373 (plurality opinion). The Department offers no rationale to treat the intangible equal-protection violation in this case any differently. *See Vitolo*, 999 F.3d at 360.

\*

All of this said, Mitchell and Schofield have now suffered this intangible injury. The district court denied their requested preliminary injunction, and the Department applied the rule of four by promoting Brian Norris to the temporary captain position in November 2021. A forward-looking injunction against this particular use of the rule cannot turn back the clock to prevent the past equal-protection injury. *Cf. City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983). Mitchell and Schofield instead may seek the traditional relief for a past injury: damages (including nominal or punitive damages). *See, e.g.*, *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 801–02 (2021); *Smith v. Wade*, 461 U.S. 30, 56 (1983).

Admittedly, there may be situations in which a court can order a preliminary injunction "to correct injury already inflicted" and to preserve the "status quo" that existed before the defendant took the harmful action. 11A Wright, *supra*, § 2947, at 125–27. Yet Mitchell and Schofield do not address this significant problem with their requested injunctive relief except with a few sentences in the conclusion of their opening brief. They recognize the possibility of an injunction that would compel the Department to demote Norris but suggest that such an order "probably is not the best remedy." Appellants' Br. 23. Indeed, even after a full trial on the merits, a court must consider a complex set of factors when deciding whether to order an employer to "bump" a potentially innocent third party from a job. *Compare Fuhr v. Sch. Dist. of City of Hazel Park*, 364

14

No. 21-4061, *Mitchell, et al. v. City of Cincinnati, et al.*

F.3d 753, 760–61 (6th Cir. 2004), *with Kraemer v. Franklin & Marshall Coll.*, 941 F. Supp. 479, 482–84 (E.D. Pa. 1996). Mitchell and Schofield argue that we might instead issue an injunction requiring the Department to promote them immediately or extend the now-expired ranking list. In my view, however, they have forfeited any alternative to the relief that they requested in the district court (an injunction against the Department's use of the rule of four) by failing to adequately brief the issue. *See Infinity Cap. LLC v. Francis David Corp.*, 851 F. App'x 579, 590 (6th Cir. 2021).

That conclusion leaves only the possibility of a future injury from the rule of four. Mitchell and Schofield might still obtain a preliminary injunction against that rule if they could prove a sufficient risk that the Department would use it again. But the "window of time" that we may consider when deciding whether a party needs a *preliminary* injunction is much shorter than the window of time that we may consider when deciding on the propriety of a *permanent* injunction. *Resurrection Sch. v. Hertel*, 35 F.4th 524, 528 (6th Cir. 2022) (en banc). Preliminary injunctions exist to protect parties who will suffer an injury before they can conclusively prove the illegality of a defendant's conduct in court. *See Ohio v. EPA*, 969 F.3d 306, 309 (6th Cir. 2020); 11A Wright, *supra*, § 2947, at 113. So if there is no reasonable risk that the defendant will inflict this injury in the time span necessary to litigate the case, a court has no need to order preliminary relief and may wait until the case's end to decide on the propriety of an injunction. *See D.T.*, 942 F.3d at 327. (In that regard, a well-known treatise suggests that there is a distinction between the irreparable injury necessary for a preliminary injunction and the lack of an adequate remedy at law necessary for a permanent one. *See* 11A Wright, *supra*, § 2944, at 89–90.)

Here, moreover, Mitchell and Schofield have not shown a reasonable likelihood that the Department would use the rule of four again in the time that it takes to litigate their suit to a final judgment. *See D.T.*, 942 F.3d at 327. Since the rule's adoption in 1987, the Department had *never*

No. 21-4061, *Mitchell, et al. v. City of Cincinnati, et al.*

previously invoked it for the captain position until its use in this case. Tr., R.22, PageID 510. The Department has only a limited number of captain positions, which open up infrequently. So the chances that four spots would again become vacant within a year are small. If that unlikely scenario came to pass and the Department threatened to use the rule again while this litigation remained pending, Mitchell and Schofield could always seek another preliminary injunction at that time. At this time, however, the risk is not sufficiently "certain and immediate" to warrant preliminary relief. *D.T.*, 942 F.3d at 327 (citation omitted).

For these reasons, I concur in the judgment affirming the district court's decision.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 21-4061

ANDREW MITCHELL; DAVID SCHOFIELD,

    Plaintiffs - Appellants,

v.

CITY OF CINCINNATI; AFTAB PUREVAL,

    Defendants - Appellees,

BRIAN NORRIS,

    Intervenor - Appellee.

FILED
Sep 29, 2022
DEBORAH S. HUNT, Clerk

Before: GIBBONS, ROGERS, and MURPHY, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.

THIS CAUSE was heard on the record from the district court and was argued by counsel.

IN CONSIDERATION THEREOF, it is ORDERED that the judgment of the district court is AFFIRMED.

**ENTERED BY ORDER OF THE COURT**

Deborah S. Hunt, Clerk