UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| ANDREW MITCHELL, et al., | Case No. 1:21-cv-626 |
| Plaintiffs, | Judge Michael R. Barrett |
| v. | |
| CITY OF CINCINNATI, et al., | **OPINION & ORDER** |
| Defendants. | |

This matter is before the Court on the motion for attorney fees and costs filed by Plaintiffs Andrew Mitchell and David Schofield. (Doc. 41). The City of Cincinnati and former Mayor John Cranley, represented by the City Solicitor, have responded in opposition. (Doc. 43). For the following reasons, the Court will grant Plaintiffs' motion at a reduced amount.

**I.      Background**

In 1987, the City of Cincinnati entered into a consent decree governing hiring practices used by the Cincinnati Police Department ("CPD"), the goal of which was "to achieve, subject to the availability of qualified applicants, a proportion of qualified blacks and females in the sworn ranks of police lieutenant, police captain, and assistant police chief (lieutenant colonel) in [CPD] equal to the proportion of qualified blacks and females in the labor force of the City of Cincinnati."[1] (Doc. 17, PageID 322). To that end, the consent decree established the "rule of four," which provided "that if the four previous

---

[1] A fuller accounting of this history may be found in the Court's order of November 14, 2021, but is not necessary to recount for these purposes.

officers promoted to the rank of captain from a list were all white men, then at the time of the promotion of the fourth officer, an additional captain position [would] be created and filled by the highest-ranked female or Black officer on the list." *Mitchell v. City of Cincinnati*, No. 21-4061, 2022 U.S. App. LEXIS 27444, at *3 (6th Cir. Sep. 29, 2022).

This mechanism was referred to as a "double fill," and "[t]he additional captain position [was] not counted towards the complement of captains while the relevant list [was] in effect." *Id.* "As a result, the use of a double-fill on a particular promotion list [did] not impact the promotion of other officers from the same list, because a subsequent departure before the list expire[d] would still create a vacancy and an accompanying promotion." *Id.*

Mitchell and Schofield, two white male officers, took the promotional exam in March 2021 and were ranked fifth and sixth, respectively, on the promotion list for captain. *Id.* at *4. Because the first four officers on the list were all white males, "the promotion of the fourth officer triggered the rule of four," and CPD utilized the double-fill mechanism to promote a Black officer who ranked seventh on the promotion list. *Id.*

Plaintiffs filed their complaint in this matter on September 29, 2021, seeking relief under 42 U.S.C. § 1983. (Doc. 1). Plaintiffs then moved for preliminary injunctive relief. (Doc. 2). Following a hearing, the Court denied the motion because "[a] loss of seniority for hypothetical vacation purposes 'falls far short of the type of irreparable injury which is a necessary predicate to the issuance of a' preliminary injunction." *Mitchell v. City of Cincinnati*, No. 1:21-CV-626, 2022 U.S. Dist. LEXIS 219429, at *14-15 (S.D. Ohio Nov. 14, 2021) (quoting *Sampson v. Murray*, 415 U.S. 61, 91-92 (1974)). A panel of the Sixth

Circuit Court of Appeals affirmed the denial of injunctive relief. *Mitchell*, U.S. App. LEXIS 27444, at *12.

After the Sixth Circuit upheld the Court's denial of injunctive relief, the parties engaged in protracted settlement negotiations, eventually resulting in the acceptance of an offer of judgment, pursuant to Federal Rule of Civil Procedure 68. (Doc. 39, 40). The offer of judgment included Plaintiffs' reasonable attorney fees and costs, with the final amount to be determined by the Court. That issue is now ripe for the Court's review.

## II. Analysis

### a. Prevailing Party Status

"In any action or proceeding to enforce a provision of [42 U.S.C. § 1983] . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). To be considered prevailing parties, movants must demonstrate that they received at least some relief on the merits of their claims. *Farrar v. Hobby*, 506 U.S. 103, 111 (1992); *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). This relief must result in a material alteration of the legal relationship between the parties, which is the touchstone of the prevailing party inquiry. *Farrar*, 506 U.S. at 113. The Supreme Court has emphasized that even an award of nominal damages suffices under this test. *Id.* at 112.

Indeed, in *Farrar,* the Court found that a civil rights plaintiff qualified as a prevailing party, despite having been awarded only one dollar in damages. *Id.* at 105. Courts have found that the acceptance of an offer of judgment pursuant Rule 68 confers prevailing party status on the accepting party. *McClain v. Hanna*, No. 19-10700, 2019 U.S. Dist. LEXIS 193350, at *4 (E.D. Mich. Aug. 23, 2019); *Hatfield v. Oak Hill Banks*, 222

3

F.Supp.2d 988, 992 (S.D. Ohio 2002). Plaintiffs here accepted a Rule 68 offer of judgment from Defendants that included a monetary sum. (*See* Doc. 39, 40). Thus, although they did not technically achieve a judgment on the merits, Plaintiffs still qualify as prevailing parties.

### b. Reasonable Attorney Fees

The determination of reasonable fees begins with a lodestar calculation, which is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. *Isabel v. City of Memphis*, 404 F.3d 404, 415 (6th Cir. 2005). Based on the results of that calculation, the Court may then shift an award upward or downward. *Hensley*, 461 U.S. at 434. One factor to be considered is the overall result obtained, which is especially critical when a prevailing party succeeds only to a limited degree. *Id.*

The Supreme Court has put forth two questions that courts must address when assessing attorney fees and costs. "First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?" *Id.* Notably, "there is no precise rule or formula for making these determinations. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Id.* at 436-437.

District courts have broad discretion when determining reasonable hourly rates for attorneys. *Wayne v. Vill. of Sebring*, 36 F.3d 517, 533 (6th Cir. 1994). "A reasonable hourly rate is the prevailing market rate in the relevant community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *McClain*, 2019 U.S.

4

Dist. LEXIS 193350, at *6. The "relevant community" for the purposes of determining the "prevailing market rates" is the "legal community within that court's territorial jurisdiction." *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000).

Judges in the Southern District of Ohio often refer to the matrix established by the Rubin Committee, which published the "list of pre-calculated billing rates tiered by years of experience." *Linneman v. Vita-Mix Corp.*, 970 F.3d 621, 630 (6th Cir. 2020). Because these base rates were established in 1983, a four percent annual cost-of-living adjustment is applied to keep them current. *QFS Transp., LLC v. Murphy*, No. 1:21-cv-00770, 2023 U.S. Dist. LEXIS 61981, at *4 (S.D. Ohio Jan. 19, 2023). Courts also have discretion to deviate based on a party's submissions, awards in analogous cases, state bar association guidelines, and knowledge and experience gained from handling similar fee requests. *Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 F. App'x 496, 499 (6th Cir. 2011).

When a case has been litigated for an extended period, it is at the Court's discretion whether to apply the current year's rates. *Barnes v. City of Cincinnati*, 401 F.3d 729, 745 (6th Cir. 2005). For instance, the Sixth Circuit has recognized the legitimacy of using historic rates from prior years so as to avoid a windfall or prevent the payment of fees at rates that were not in effect when much of the work was done. *See Gonter v. Hunt Value Co.*, 510 F.3d 610, 617 (6th Cir. 2007). Such a change is reasonable provided that the district judge articulates some rationale. *Id.*

Plaintiffs contend that they are entitled to $205,652.43 in attorney fees and $3,021.40 in court costs; these figures align with the 2024 Rubin Rates. (Doc. 41, PageID 781). Defendants counter that the requested rates "are unreasonably high and should be reduced," in part because the experience of Plaintiffs' counsel is "significantly less

5

than . . . two attorneys who received recent awards of fees in the Southern District at substantially lower rates than all but one of the attorneys in this matter." (Doc. 43, PageID 846-47). Defendants also argue that the Court should award "very little" for work done prior to the Sixth Circuit's decision of September 29, 2022, because "the vast majority of the work on this case concentrated on the requests for injunctive relief." (*Id.*, PageID 844).

Although cognizant of the fact that a sizeable portion of the work done prior to September 2022 was focused on injunctive relief and an unsuccessful interlocutory appeal, the Court is keenly aware of its responsibility to "focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Hensley*, 461 U.S. at 435. Apart from the hours expended in 2024 in pursuit of the Rule 68 judgment, a majority of the time billed appears to be from 2021 and 2022. (Doc. 41, PageID 786-829). In light of this fact, the Court finds it most reasonable to utilize the applicable Rubin Rates from 2023: $616.17 for a senior partner (more than 21 years of experience) and $544.59 for a partner (11-20 years of experience).

Finally, the Court exercises its discretion to apply an "across-the-board reduction" of thirty percent to reflect Plaintiffs' partial degree of success. *Ky. Rest. Concepts Inc. v. City of Louisville*, 117 F. App'x 415, 421-22 (6th Cir. 2004); *see Hensley*, 461 U.S. at 436-37 ("The district court . . . may simply reduce the award to account for the limited success. The court necessarily has discretion in making this equitable judgment."); *see also Richard v. Caliber Home Loans, Inc.*, 823 F. App'x 940, 946-47 (6th Cir. 2020) (affirming a thirty percent reduction for limited success and noting that the district court's determination was owed "substantial deference"). After calculating time billed under the 2023 Rubin Rates and applying a thirty percent reduction to account for the unsuccessful

pursuit of injunctive relief, the Court arrives at a fee award of $139,500.77. The unchallenged bill of costs is not subject to a reduction, and will therefore remain at $3,021.49.

### III. Conclusion

For the foregoing reasons, the motion for fees and costs is **GRANTED in part**. Plaintiffs shall be awarded $139,500.77 in attorney fees and $3,021.49 in costs.

**IT IS SO ORDERED.**

                                              */s/ Michael R. Barrett*
                                              Michael R. Barrett
                                              United States District Judge